NOVELTY PAPER-BOX CO. *v.* STAPLER.*

*(Circuit Court, D. New Jersey.* February 8, 1881.)

1. RE-ISSUE No. 7,488 —"IMPROVEMENT IN PAPER BOXES."

Re-issued patent No. 7,488, granted to the complainant, as the assignee of Henry R. Heyl, February 6, 1877, for "improvement in paper boxes," *held, not* to embrace more than the original patent indicates and suggests.

2. SAME—FLAP-LOCKING DEVICE.

*Held, also,* that the evidence shows that there is nothing new in any of the instrumentalities used by the patentee, Heyl, except the interlocking the outer flaps of the ends of the box by his flap-locking device.

3. SAME—FLAP-TUCKING DEVICE.

*Held, also,* that Heyl disclaims, in his said patent, a flap-fastening device of tongues projecting longitudinally from the flap, and inserted and withdrawn in the line of the opening strain, and therefore complainant is estopped from asserting a claim for a flap-tucking device of that character.

4. SAME—CONSTRUCTION.

*Held, also,* that in view of the state of the art at the date of the Heyl invention, and the language of the specification, the proper and necessary construction of the complainant's patent is for a *flap-locking device* of laterally-projecting tongues entering corresponding slots, contradistinguished from a *flap-tucking device* of longitudinally-projecting tongues entering and withdrawn from slots in the line of the opening strain.

5. SAME—SECOND CLAIM—CONSTRUCTION.

*Held, also,* that, if the *second claim* of the complainant's said re-issued patent be regarded as simply introducing the tongues or corners without preserving the locking quality referred to, it is such a departure from the original invention as to render the said re-issue invalid.

*Reported by Wm. A. Redding, Esq., of the Philadelphia bar.

6. SAME—PATENT No. 183,950.

> And held, also, that the complainant's re-issued patent is not infringed by the defendant's use of boxes manufactured under patent No. 183,950, granted to Lockwood and Lynch, October 31, 1876, because such boxes do not contain the flap-locking or hooking device deemed an essential quality or characteristic of complainant's said re-issued patent, but have a flap-tucking device with tongues, *which tuck but do not lock.*

In Equity.

*Munson* v. *Phillipp,* for complainant.

*William A. Redding,* for defendant.

NIXON, D. J.   This suit is for infringement of re-issued letters patent No. 7,488, granted to the complainant, as the assignee of Henry R. Heyl, February 6, 1877, for "improvement in paper boxes."   The original patent to Heyl was dated June 30, 1874, and numbered 152,636, and embraced a single claim, to-wit: "A paper or pasteboard wrapper secured in a tubular form, and closed at one or both ends by portions of the sides thereof, bent over and locked into each other by laterally extending tongues and corresponding openings, as described."

On the twenty-first of September, following, the patentee, Heyl, filed a petition in the patent-office to surrender the said letters patent, alleging that the same were not valid or available to him, by reason of an insufficient or defective specification, and asking for a re-issue on amended specifications. These contained three claims, the first and second of which related to a particular-shaped kerf, which was not claimed in the original specification.   The commissioner decided against the application, on the ground that "considerable new matter had been introduced into the amended specification, which was unauthorized by the original drawing and model;" and for the further reason that, in view of the state of the art, it was not invention to construct a paper box with any particular-shaped kerf, but simply a matter of judgment, depending upon the exigencies of the case.   No further steps were taken by the patentee for a re-issue until November 17, 1876, when new amendments to the specifications, containing four claims, were filed in the office.   After various changes and modifica-

tions the re-issue was granted February 6, 1877, as above stated, and the suit is founded in an alleged infringement of the second claim of the said re-issue.

In the meantime, however, Charles L. Lockwood and Daniel Lynch applied for a patent for an improvement in paper boxes, and on the thirty-first of October, 1876, obtained letters patent, numbered 183,950. The defendant insists that the paper boxes which he has purchased and used, and which are claimed to infringe the complainant's re-issue, were lawfully manufactured under the Lockwood and Lynch patent; and that, if the product infringe any of the claims of the re-issue, it is because the complainant has covertly incorporated into the amended specifications new matter, in order to deprive the owners of the Lockwood and Lynch patent of the benefit of their invention.

Under these circumstances three questions naturally arise —*First*, whether the re-issue is for the same invention as the original patent; *second*, in view of the state of the art, what is the proper and necessary construction of the complainant's patent; and, *third*, whether it is infringed by the Lockwood and Lynch patent.

1. The first inquiry is determined by a comparison of the original patent with the re-issue. Does the latter embrace more than the former fairly indicates and suggests? The patentee, in the specifications of the original, states that "his invention consists in making wrappers in tubular form, with one or both of the ends constructed with two or more flaps to fold one on another, the outer flap being provided with laterally-projecting tongues entering corresponding slots or openings in the flap below, so as to constitute an effective lock— the line at which the tongues enter and leave the slits being at right angles to the line of strain produced by internal pressure." He says "the principal objects of the invention are to produce wrappers, as neat and attractive as finished boxes, with great economy in labor and material, and wrappers which may be quickly and securely locked, so as to dispense with the need of tying."

The four drawings, accompanying the specifications, are

intended to exhibit to the eye, in the different stages of folding, a wrapper or paper box made from a single piece of pasteboard, and showing the patentee's method of locking the ends of the box, so as to distinguish his device from any in which "the tongue is inserted and withdrawn in the line of the opening strain, or in which the tongue projects longitudinally from its flap, or is folded around the box in the same direction as the flap that it is intended to secure."

The second claim of the re-issue—the one alleged to be infringed—seems to be for the exact devices, or combination of devices, described in the original patent. This is so evident that the defendant's expert, Mr. Hicks, when asked by the counsel of the defendant to state what changes, if any, had been made in the re-issue, frankly replied, (defendant's record, 220): "I have made the examination and comparison required by the question, and I find, in my opinion, no substantial change in the subject-matter of the re-issue from the subject-matter of the original patent."

When a skillful expert, alive to the interests of his employer, makes such an answer, it may be safely assumed that the re-issue is for the same invention as the original patent.

2. As to the construction of the second claim of the complainant's patent. It is insisted with much force, by the counsel for the defendant, that if it be as broadly construed as the complainant contends for, it is void for want of novelty. The drawings and specifications, both in the original and the re-issue, exhibit the locking of the box by means of the shoulders of the tongues or corners as the distinguishing feature of the invention. If this claim be regarded as simply introducing the tongues as corners, without preserving the locking quality referred to, it does not produce the result *substantially* as described, and is such a departure from the original invention as to render the re-issue invalid, being for a different invention. The evidence shows that there is nothing new in any of the instrumentalities used by the patentee, Heyl, except the interlocking the two outer flaps of the ends of the box in the manner set forth.

The counsel for the complainant speaks of the box de-

scribed in the specifications of the patent as having the following characteristics: (1) It is made entirely from one piece of pasteboard; (2) it is kerfed on the lines of its folds; (3) it has a lap secured to one of its sides to hold it in tubular shape; (4) it has four flaps at each end to effectually close the ends; (5) it has one of these flaps at each end provided with two slits or slots, cut at an angle to its hinge, into which the two corners of the outer flap are *introduced*, and act to hold down the four flaps and keep the end of the box closed.

There was no novelty (*a*) in making boxes from one piece of pasteboard; (*b*) nor in kerfing the lines of the folds, unless kerfing is something so different from creasing for the same purpose as to make the difference a patentable invention; (*c*) nor in the lap to secure one of the sides to hold it in tubular shape; (*d*) nor in the four flaps at each end of the box. The testimony of a number of witnesses, as well as the several patents of J. W. Wilcox, granted February 28, 1871; of G. L. Jaeger, July 25, 1871; and of Charles T. Palmer, on October 22, 1872, reveal that these characteristics of the complainant's patent are old.

Nor is the mere introducing, *i. e.*, "inserting and withdrawing the tongue in the line of the opening strain, or in which the tongue projects longitudinally from its flap," the invention patented by Heyl. He distinctly asserts, in the specifications of the original patent, (which he fails, indeed, to put into the specifications of his re-issue,) that he claims something different and distinguishable from that, to-wit: the *interlocking* of the two tongues or corners of one of the flaps into the two slits of the opposite flap. Construing the claim by the specifications, and by the state of the art at the date of the invention, I am constrained to hold that it necessarily includes locking as well as tucking devices, and that if the locking cannot be accomplished except by the use of the laterally-projecting tongues, then the complainant's construction of the second claim renders the re-issue void, as a departure from the original invention.

3. Does the defendant infringe the claim as thus interpreted? It is not necessary for me to decide in regard to the

validity of the Lockwood and Lynch patent, under which the articles alleged to be infringements were manufactured. It is sufficient to say that I do not find in these articles the locking or hooking of the flaps which I have deemed an essential quality or characteristic of the complainant's re-issue. The tongues project, not laterally, but longitudinally, from their flap. They tuck but do not lock. The patentee, Heyl, asserted that he had discovered something better than these longitudinal tongues or corners, and disclaimed them, directly in the original specifications, and inferentially in the re-issue. As a learned judge (Curtis) tersely remarked, in *Byam* v. *Farr*, 1 Curt. 264: "Upon the soundest principles, a patentee must be held to be estopped from asserting a claim which is expressly waived in the record."

The defendant not infringing, the complainant's bill is dismissed, with costs.